In re **PROVIDIAN FINANCIAL CORP. SECURITIES LITIGATION.**

**Misc. No. 04–0263 (PLF).**

United States District Court, District of Columbia.

June 2, 2004.

Tracy D. Rezvani, Finkelstein, Thompson & Loughran, Washington, DC, James M. Wilson, Joseph P. Helm, III, Chitwood & Harley, LLP, Atlanta, GA, for Plaintiff.

Rosa M. Koppel, Office of the Comptroller of the Currency, Washington, DC, for Movant.

*OPINION AND ORDER*

PAUL L. FRIEDMAN, District Judge.

Plaintiffs filed this action pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure moving to compel John D. Hawke, Jr., the Comptroller of the Currency and head of the Office of the Comptroller of the Currency ("OCC"), to comply with a subpoena commanding the production of documents and his appearance to give deposition testimony. The OCC opposed plaintiffs' motion and filed a motion to quash the subpoena. The Court heard oral argument on the motions on May 28, 2004, at which time the Court announced certain findings of fact and conclusions of law memorialized by separate Order issued that same day. The Court also directed the OCC to submit to Chambers for *in camera* review the three documents, which total 29 pages, that the OCC has withheld from production. The remaining issues raised in the parties' motions are the subject of this Opinion.

## I. BACKGROUND

In their motion, plaintiffs assert that on May 13, 2004, they served a subpoena on the OCC in connection with a federal securities class action pending in the United States District Court for the Northern District of California ("May 13 Subpoena"). In that class action, plaintiffs have alleged that Providian Financial Corp. ("Providian") and certain individual defendant officers (collectively, "defendants") engaged in a course of conduct designed to mislead the investing

public through the issuance of a series of false and misleading public statements and through the failure to make timely mandated updates and corrections. *See* Plaintiffs' Motion to Compel Compliance from the Office of the Comptroller of the Currency with a Rule 45 Subpoena ("Pls.' Mot.") at 1. Plaintiffs assert that "the Defendants engaged in this fraudulent conduct to mask the serious deterioration of Providian's credit card loan portfolio and to conceal their knowledge that Providian's expected future managed net credit losses and managed net credit loss rates would not meet projections." *Id.* at 1–2.

During the course of discovery in the underlying action, plaintiffs determined that the OCC, the Federal Deposit Insurance Corp. ("FDIC"), and the Utah Department of Financial Institutions ("UDFI") each had examined Providian and two of its bank subsidiaries, Providian National Bank ("PNB") and Providian Bank, for "safety and soundness," focusing on the way in which Providian calculated its loan losses and on the adequacy of its loan loss reserves. These investigations resulted in a consent agreement entered into by PNB and the OCC on November 21, 2001 ("November 21 Agreement"), which required Providian to increase its loan reserves, mandated charges to Providian's financial statements and restricted Providian's operations. *See* Pls.' Mot. at 2. Plaintiffs assert that the issues examined by the OCC, and memorialized in the consent agreement, are at the heart of plaintiffs' securities class action. *See id.*

Plaintiffs submitted requests for testimony and documents to the OCC on April 16 and April 19, 2004.[1] Specifically, plaintiffs sought access to Reports of Examination and other correspondence that the OCC may have sent to PNB or PNB's auditor, Ernst & Young, pertaining to the OCC's 2001 examination of PNB and the November 2001 Agreement. By letter of May 13, 2004, the OCC stated that it had located three responsive documents, but denied plaintiffs' request on the grounds that: (1) "none of the [responsive documents] was written by the close of the

class action period and so none pertains to OCC communications with the Bank during the relevant period"; (2) "the parties already have access to the [November 21 Agreement], Article VI of which reflects the OCC's concerns with the Bank's allowance for loan and lease losses and its instructions to the Bank as to how to calculate the allowance"; and (3) "the factual information about the Bank's allowance, lending function, and the deterioration in asset quality upon which the OCC based its opinions is available in non-privileged documents generated by the Bank and Ernst & Young." Motion of the Office of the Comptroller of the Currency to Quash the Rule 45 Subpoena ("OCC Mot."), Ex. 1, Letter of May 13, 2004 from Timothy W. Long, Senior Deputy Comptroller to James E. Evangelista, Esq. ("First OCC Denial Letter").

By letter of May 14, 2004, plaintiffs responded to the OCC denial with a lengthy argument and a request for reconsideration. *See* OCC Mot., Ex. 2, Letter of May 14, 2004 from J. Evangelista to T. Long ("Pls.' OCC Recon. Req."). Also in response to the OCC's denial, plaintiffs served the May 13 Subpoena on the head of the OCC to obtain documents and testimony related to the OCC's investigation of Providian. The subpoena included eight document requests, seven of which concerned documents related to the OCC and its examination of Providian, PNB and/or the individual defendants. The remaining request sought the minutes of any meetings of the Boards of Directors of Providian and PNB and any committees thereof. *See* Pls.' Mot., Ex. A, May 13 Subpoena. The OCC reiterated its denial by letter of May 21, 2004, and raised the additional ground for denial that the documents in question were protected by the "bank examination privilege." *See* OCC Mot., Ex. 3, Letter of May 21, 2004 from T. Long to J. Evangelista ("Second OCC Denial Letter").

## II. DISCUSSION

### A. *Standard of Review*

■ For the reasons stated in open court at the conclusion of the May 28 hearing, the

---

1. Plaintiffs claim that they made similar requests of the FDIC and the UDFI and that both agencies agreed to turn over documents. *See* Pls.' Mot. at 3.

Court concludes that the proper standard of review in considering the parties' motions is the "relevancy" standard articulated in Rules 26 and 45 of the Federal Rules of Civil Procedure, not the arbitrary and capricious standard of the Administrative Procedure Act. Under the Federal Rules, discovery is broad, as "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." FED. R. CIV. P. 26(b)(1). Discovery may be obtained from non-parties pursuant to Rule 45, but that non-party can move to quash a subpoena by demonstrating that the subpoena "requires disclosure of privileged or other protected matter and no exception or waiver applies, or subjects [the non-party] to undue burden." FED. R. CIV. P. 45(c)(3).

### B. *Plaintiffs' Requests*

Plaintiffs assert that "the operative complaint in this action alleges that by October 2000 Defendants knew that Providian's actual credit losses would significantly exceed their loss projections for 2001, which projections they nevertheless disseminated to the investing public." Plaintiffs' Reply Memorandum in Further Support of their Motion to Compel. ("Pls.' Rep.") at 9. Plaintiffs' request to the OCC seeks access to Reports of Examination and other correspondence that the OCC may have sent to PNB or its auditor Ernst & Young, pertaining to the OCC's 2001 examination of PNB and the November 2001 Agreement.

#### 1. Objection on the Basis of the Date of the Documents

■ The OCC objects to plaintiffs' document subpoena on several grounds. First, the agency concluded that the three documents that address the issues raised in plaintiffs' request—portions of an Examination Report pertaining to the November 21 Agreement and two related letters—were not written during the class period and therefore that plaintiffs have failed to demonstrate their relevance. *See* First OCC Denial Letter

at 1. Plaintiffs respond that the materials were written to address defendants' activities prior to and during the class period and therefore are relevant. *See* Pls.' OCC Recon. Req. at 2–3. As a preliminary matter, the Court concludes that the origination dates of the three documents is not dispositive as to the relevance of the documents because the relevance standard is so broad under the Federal Rules of Civil Procedure. The Court only can look to the content of the documents in order to determine whether the documents are relevant and should be produced. This examination is detailed in Section II(B)(4), *infra.*

#### 2. Objection on the Basis of Availability

■ Second, the OCC claims that plaintiffs can obtain the factual information they seek from other sources, including the November 2001 Agreement and non-privileged documents available from Providian and Ernst & Young. *See* First OCC Denial Letter at 1; OCC Mot. at 9; Second OCC Denial Letter at 2. Plaintiffs respond that the information is not available because defendants and their auditors have refused to produce the documents on the basis of the bank examination privilege pursuant to the direction of the OCC. *See* Pls.' Mot. at 16; Pls.' Rep. at 10–11; Pls.' OCC Recon. Req. at 4. At oral argument, the OCC conceded that it had directed the defendants and their auditor to withhold documents under the privilege. *See* Transcript of Motions Hearing, May 28, 2004 ("Tr.") at 15:6–15:22. Accordingly, the OCC cannot refuse to comply with the subpoena on the ground that the information is obtainable by plaintiffs elsewhere.

#### 3. The Bank Examination Privilege

■ Finally, the OCC argues that its opinions and conclusions are protected from disclosure by the bank examination privilege. In *In re Subpoena Served upon the Comptroller of the Currency (Fleet),* 967 F.2d 630 (D.C.Cir.1992) (*"Fleet"*), the court of appeals articulated the standard for consideration of a claim for withholding non-party discovery under the bank examination privilege. Recognizing the longstanding existence of this

qualified privilege, the court first discussed the reasons underlying the doctrine:

> [T]he bank examination privilege is firmly rooted in practical necessity. Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of supervision therefore depends vitally upon the quality of communications between the regulated banking firm and the bank regulatory agency.... Because bank supervision is relatively informal and more or less continuous, so too must be the flow of communication between the bank and the regulatory agency. Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank. These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.

*Id.* at 633–34. The court then noted that this privilege, "like the deliberative process privilege, shields from discovery only agency opinions or recommendations; it does not protect purely factual material." *Id.* at 634.

The court of appeals in *Fleet* also recognized that despite the important policies underlying the privilege, in certain circumstances the privilege may be overridden even for agency opinions and recommendations if the requester demonstrates that good cause exists to do so. The court articulated a balancing test by which competing claims of the bank examination privilege and good cause may be evaluated:

(1) the relevance of the evidence sought to be protected;

(2) the availability of other evidence;

(3) the "seriousness" of the litigation and the issues involved;

(4) the role of the government in the litigation; and

(5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*In re Subpoena Served upon the Comptroller of the Currency (Fleet)*, 967 F.2d at 634 (quoting *In re Franklin Nat'l Bank Securities Litigation*, 478 F.Supp. 577, 583 (E.D.N.Y.1979)).

The OCC, as the agency asserting the privilege, has the burden of demonstrating its applicability. *See Schreiber v. Society for Savings Bancorp, Inc.*, 11 F.3d 217, 220 (D.C.Cir.1993). When asserting the privilege, the OCC first must demonstrate that the materials are deliberative rather than factual; and if facts are intertwined with the OCC's opinions, conclusions and recommendations, the OCC must show that the deliberative portions cannot be redacted from the documents. *See id.*[2] If the OCC demonstrates that the factual and privileged material is "inextricably linked, then the court must determine whether the privilege ... should be overridden for good cause and the documents produced" under the *Fleet* standard. *Id.* The court of appeals also noted that while some documents are solely deliberative in nature, "every court that has examined the nature of bank examination reports thus far has found them to be at least partly factual." *Id.* at 221.

### 4. The Documents in Question

■ Because the bank examination privilege only extends to non-factual material, the Court first must determine whether the documents in question contain factual or deliberative materials, or both. The three documents submitted for *in camera* review total 29 pages and have been labeled by the OCC as "OCC 01–29." Pages OCC 1–19 are portions of a Report of Examination ("Report"). Pages OCC 20–22 comprise a letter from the OCC to the Board of Directors of PNB. Pages OCC 23–29 are a letter and an enclosure from PNB to the OCC. Upon review of the documents, the Court makes the

---

**2.** Because the purpose of the privilege is to protect the interactive process between a bank and its regulator, the Court "must determine anew in each case whether some portion of the bank examination reports (*and responses thereto*) are factual in nature and thus outside the privilege." *See Schreiber v. Society for Savings Bancorp, Inc.*,

11 F.3d at 221 (emphasis added). Accordingly, the protection extends both to bank examination reports and opinions and to an examinee's responses thereto. *See id.; In re Subpoena Served upon the Comptroller of the Currency (Fleet)*, 967 F.2d at 634.

following findings with respect to whether the documents are purely factual, purely deliberative, that is containing only opinions, recommendations or conclusions, or a mixture of both, and, if mixed, whether the facts are segregable from the opinions:

- OCC 01 appears to be the first page of the Report and contains an OCC statement regarding the confidentiality of the Report and a caption indicating the fact that PNB is the subject of the Report. The content of the page is factual and therefore does not fall within the bank examination privilege.

- OCC 02 is the table of contents to the Report, which provides a general outline of the OCC's Report. This summary itself does not contain the OCC's conclusions, but does indicate what elements the OCC reviewed and how it chose to organize its findings and conclusions. Although revealing what areas the OCC reviewed to a certain extent does underscore what the OCC thought important and provides some insight into the OCC's opinion about what within PNB merited review, the Court concludes that revealing the fact that the OCC looked at certain areas is not the same as revealing its conclusions or opinions regarding those areas. OCC 02 is not deliberative and therefore does not fall within the privilege.

- OCC 03, entitled "Examination Conclusion and Comments," indicates the dates of three examinations of PNB's asset quality, the actual asset quality ratings of those examinations, and a statement regarding the OCC's methodologies. With the exception of the list of the actual asset quality ratings near the top of the page, which are deliberative in nature and therefore are protected by the privilege, the material on OCC 03 is factual and is not protected by the privilege.

- The first portion of OCC 04 is entitled "Examination Conclusions," a subsection of "Examination Conclusion and Comments," and states the OCC's examination conclusions regarding asset quality. This material is deliberative, containing the opinions and conclusions of the OCC, and falls within the privilege. The second portion of the page, entitled "Formal Agreement," summarizes the November 21 Agreement. This material is factual and is not protected by the privilege.

- OCC 05 is a continuation of the "Examinations Conclusions and Comments." The entire page consists of the OCC's conclusions with respect to PNB's compliance with the November 21 Agreement and therefore falls within the privilege.

- OCC 06 includes a summary of the OCC's confidentiality requirements and the signatures of the examiners. This page contains factual information that is not protected by the privilege.

- OCC 07–08 include the header "Matters Requiring Attention" and delineate the OCC's conclusions with respect to PNB's compliance with the November 21 Agreement. The content of these pages is deliberative and falls within the privilege.

- OCC 09–12 concern the OCC's examination of PNB's asset quality. The top portion of OCC 09 includes a statement of how asset quality is examined by the OCC. This statement is not deliberative in nature and does not fall within the privilege. The rest of OCC 09 is deliberative, containing the OCC's opinions and conclusions, with the exception of one portion of the second full paragraph under the heading "Component Rating." The second through fifth sentences of that paragraph detail the level of certain loans. This material is factual and is not protected by the privilege. The content of OCC 10–12 includes OCC conclusions regarding asset quality and falls within the privilege.

- OCC 13, the first portion of which is entitled "Summary of Items Subject to Adverse Calculation," is deliberative, reflecting the OCC's conclusions, and falls within the privilege. The second portion of the page is entitled "Summary of Items Listed as Special Men-

tion," and lists the examination dates of "Loans/Leases." While the dates of those examinations are factual and not protected, the results themselves do fall within the privilege.

- OCC 14 is entitled "Analysis of Earnings," and includes three comparative lists entitled "Comparative Statements of Income," "Reconcilement of Allowance for Loans and Lease Losses," and "Other Component Ratios and Trends." The information in these lists is factual and is not protected by the privilege.

- OCC 15–16 are entitled "Compliance with Enforcement Actions." The first paragraph on OCC 15 states the OCC's policy regarding how the agency rates compliance. That material is not deliberative and therefore is not subject to the privilege. The remainder of OCC 15–16 reflects the OCC's opinions and conclusions with respect to PNB's compliance, however, and falls within the privilege.

- OCC 17–18 are entitled "Other Matters" and consist of the OCC's evaluation of PNB. The material on these two pages falls within the privilege.

- OCC 19 is the "signature page" of the Report, providing for the signature of certain PNB directors upon review of the document. This page is not deliberative and does not fall within the privilege.

- OCC 20–22 comprise a letter from the OCC to PNB. The content of the letter is deliberative, conveying a decision made by the OCC and reasons for the decision, and therefore falls under the privilege. The date and address header on OCC 20 and the signature of the OCC official on OCC 22 are not deliberative, however, and therefore are not protected by the privilege.

- OCC 23–29 are a letter from PNB to the OCC and its enclosure. OCC 23 is an introductory letter, the content of which is not in response to an inquiry from the OCC and therefore

does not fall within the privilege.[3] OCC 24 describes the enclosure as a report concerning PNB's adherence to the November 21 Agreement. This description is not in response to an OCC finding or conclusion and does not fall within the privilege. OCC 23–29 is PNB's detailed compliance report with respect to certain Articles of the November 21 Agreement; this deliberative information directly responds to the OCC compliance inquiry and falls within the privilege.

With respect to those portions of the documents that the Court has determined are non-deliberative in nature, the Court concludes that under the broad parameters of Rule 26, the information is relevant and should be disclosed to plaintiffs. *See* FED. R. CIV. P. 26 ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.") As plaintiffs' counsel noted at oral argument, "[e]ven if these documents postdate the class period, if they relate back to events that transpired during the class period or earlier, it absolutely is relevant to this case." Tr. at 18:24–19:2.

### 5. Overriding the Qualified Privilege

[7] In light of the Court's conclusion that the remaining material in the three documents is deliberative and therefore protected under the bank examination privilege, the Court now must determine whether there is good cause to override the qualified privilege under the five-factor *Fleet* balancing test. The Court first concludes that the deliberative material in question is relevant to plaintiffs' action under the parameters of Rule 26; the material concerns defendants' compliance with the November 21 Agreement and addresses issues that in some respects relate to the questions raised in the class action. *See* Pls.' Mot. at 14–15. The Court also concludes that because defendants and their auditor have refused to provide those records to plaintiffs under the instruction of the

---

**3.** Only those bank documents that are in response to the OCC's conclusions, opinions or

inquiries are protected by the privilege. *See* note 2, *supra.*

OCC, plaintiffs cannot obtain the information elsewhere.

Although these two factors weigh in favor of disclosure, the Court nevertheless concludes that plaintiffs have failed to demonstrate that good cause exists to override the bank examination privilege. In addressing the "seriousness of the litigation" factor, plaintiffs rely heavily on the importance of the federal securities laws as the factor weighing most in favor of disclosure. While the importance of the policies underlying the federal securities laws cannot be overstated, those policies do not presumptively preempt the policies underlying the bank examination privilege. Although the securities law are founded on an ideal of full disclosure, similar disclosure by bank regulators is not mandated, nor should it be. Bank regulators have a different role to play and different statutes to enforce than do private securities lawyers. *See In re Subpoena Served upon the Comptroller of the Currency (Fleet)*, 967 F.2d at 634 ("The supervisory relationship ... calls for adjustment, not adjudication."). Contrary to plaintiffs' core argument, the policies underlying the bank examination privilege are not necessarily eclipsed whenever the policy in favor of securities disclosure surfaces.

As to the fourth factor, the government is not involved in the underlying class action, which is proceeding between private parties. The policy in favor of overriding the privilege in order to "shed light on alleged government malfeasance" therefore is not at play. *In re Subpoena Served upon the Comptroller of the Currency (Fleet)*, 967 F.2d at 634 (quoting *In re Franklin Nat'l Bank Securities Litigation*, 478 F.Supp. at 582). Nor have the parties indicated the government has sought to use its own civil or enforcement powers under the securities law to pursue the claims made by the plaintiffs. Finally, the Court concludes that disclosure of the deliberative material could lead to "timidity by government employees who will be forced to recognize that their secrets are violable." *In re Subpoena Served upon the Comptroller of the Currency (Fleet)*, 967 F.2d at 634. While it may not deter other government agencies from disclosing information relating to Providian because, as plaintiffs stress, the FDIC already has disclosed its findings with respect to defendants, disclosure may have a chilling effect on future OCC efforts. For these reasons, the Court concludes that plaintiffs have not demonstrated good cause for overriding the bank examination privilege with respect to those portions of the documents falling within it. Accordingly, it is hereby

ORDERED that Plaintiffs' Motion to Compel Compliance from the Office of the Comptroller of the Currency with a Rule 45 Subpoena [1–1] is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that the Motion of the Office of the Comptroller of the Currency to Quash the Rule 45 Subpoena [3–1] is GRANTED in part and DENIED in part; and it is

FURTHER ORDERED that the Office of the Comptroller of the Currency immediately shall produce to plaintiffs those portions of the three documents submitted for *in camera* review that the Court concluded in Section II(B)(4) of this Opinion are not protected by the bank examination privilege.

SO ORDERED.